JEAN F. REMIGIO, Plaintiff-Appellee,
v.
FRED ORTIZ, Defendant-Appellant, and ROYAL LAMARR HARDY, aka ROYAL LAMARR SOUNET; URSULA A. SUPNET, aka URSULA ANN SOUNET; and MICHAEL L. KAILING, Defendants
No. 28504
Intermediate Court of Appeals of Hawaii.
July 23, 2009.
On the briefs:
Fred Ortiz, Defendant-Appellant, pro se.

SUMMARY DISPOSITION ORDER
WATANABE, Acting C.J., FOLEY, and FUJISE, JJ.
Defendant-Appellant Fred Ortiz (Ortiz) appeals from the April 5, 2007 judgment entered by the Circuit Court of the First Circuit[1] (circuit court) in favor of Plaintiff Jean F. Remigio (Remigio), which held Ortiz and Defendant Royal Lamarr Hardy, also known as Royal Lamarr Sounet (Hardy) (collectively, Defendants) jointly and severally liable for $131,265.26 in damages and attorney's fees. We affirm.

BACKGROUND

A.
From September 2000 through December 2002, Remigio paid Defendants over $13,000.00 for their tax services. Defendants represented that Remigio (1) was not liable to pay personal income taxes and has a valid defense to any criminal prosecution for willful failure to file tax returns, and (2) may recover any taxes withheld during the prior three years. Defendants' tax services included opinion letters written by Ortiz, who held himself out as a tax consultant. Ortiz's opinion letters claimed that the filing of United States income-tax returns was voluntary and Remigio was not required to file personal income-tax returns.
Relying on Defendants' advice, Remigio did not pay income taxes for the tax years 2000, 2001, and 2002, and she sought a tax refund for the tax years 1997, 1998, and 1999. Remigio has since incurred financial penalties from the Internal Revenue Service and the State of Hawai`i, Department of Taxation and filed for bankruptcy.

B.
Subsequently, Hardy, Ortiz, Ursula Supnet (Supnet), Michael L. Kailing (Kailing), and Terry Leroy Cassidy (collectively, Criminal Defendants) were indicted in the United States District Court for the District of Hawai`i for conspiring to defraud the United States in the assessment and collection of income taxes. The indictment charged that Criminal Defendants, led by Hardy, promoted and sold tax-evasion schemes, which included Ortiz's opinion letters. Hardy and Ortiz were convicted of this charge.[2]

C.
Remigio filed the civil complaint underlying this case, seeking restitution and damages against Hardy, Supnet, Kailing, and Ortiz. The complaint's factual allegations regarding Defendants' conduct mirrored the allegations in the criminal indictment. Remigio asserted claims for, among others, Count I"Constructive Trust/Unjust Enrichment/Restitution"; Count II"Violation of [Hawaii Revised Statutes (HRS)] §§ 1-5, 1-6";[3] and Count V"H.R.S. Chapter 480 Claim[.]"[4] Remigio sought restitution for the amount paid for Defendants' tax services, actual damages incurred in relying on Defendants' tax advice, and treble damages and attorney's fees as provided by HRS § 480-13(b)(1).[5]
In response, Ortiz admitted to receiving $80.00 in exchange for sending his opinion letters to Remigio but denied involvement in any tax-evasion schemes and maintained that his opinion letters were truthful. Hardy filed various pro se motions in opposition. The circuit court entered default against Supnet and Kailing because they did not answer the complaint.
The circuit court granted summary judgment in favor of Remigio and against Hardy and Ortiz as to Counts I, II, and V and dismissed the remaining counts without prejudice. In finding that there were no genuine issues of material fact, the circuit court noted that Hardy and Ortiz were convicted of the same conduct alleged in Remigio's complaint; namely, that Defendants' purported tax services were illegal tax-evasion schemes, which fraudulently represented that U.S. citizens are not required to file income tax returns or to pay income taxes. Judgment was entered against Hardy and Ortiz, jointly and severally, in the amount of $131,265.26, plus post-judgment interest.[6]

DISCUSSION

A.
Ortiz submits the following issue on appeal: "Whether the Circuit Court erred in granting Summary Judgment because based on the pleadings and affidavits, on file, there are many genuine issues of material fact not in evidence and th [sic] moving party is not entitled to a judgment as a matter of law." He argues that summary judgment was unwarranted because filing income taxes is "completely voluntary" and therefore neither the government nor Remigio have established that Ortiz's "opinion letters are illegal, or even designed to accomplish a purpose that is illegal."

B.
Upon a careful review of the record and the brief submitted, and having given due consideration to the case law and statutes relevant to the arguments advanced and the issues raised, we conclude that Ortiz's claim that his opinion letters were lawful has no merit. Ortiz's opinion letters were the basis for his indictment and conviction for conspiracy to defraud the United States. Therefore, the legality of Ortiz's opinion letters has "already been litigated and adversely decided against him in the criminal case[,]" Tradewind Ins. Co. v. Stout, 85 Hawai`i 177, 185, 938 P.2d 1196, 1204 (App. 1997), inasmuch as the "[p]reclusive use of a criminal conviction has been extended to allow a nonparty to a criminal action to assert collateral estoppel against the criminal defendant in a subsequent civil action." Id. at 186, 938 P.2d at 1205. See also Asato v. Furtado, 52 Haw. 284, 292, 474 P.2d 288, 294 (1970) ("Where, as in the present case, a defendant has had a jury trial, was represented by counsel, cross-examined witnesses, and was convicted by a unanimous jury beyond a reasonable doubt, we think that the judgment based upon the conviction can reasonably be given some weight in a subsequent civil trial based upon the same transaction.").
Therefore, the April 5, 2007 judgment is hereby affirmed.
NOTES
[1] The Honorable Bert I. Ayabe presided.
[2] The record does not indicate whether the remaining Criminal Defendants were convicted or acquitted of this charge.
[3] HRS § 1-5 (1993), entitled "Contracts in contravention of law[,]" states:

Private agreements shall have no effect to contravene any law which concerns public order or good morals. But individuals may, in all cases in which it is not expressly or impliedly prohibited, renounce what the law has established in their favor, when such renunciation does not affect the rights of others, and is not contrary to the public good.
"Whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed." HRS § 1-6 (1993).
[4] HRS § 480-2 (2008) states currently, as it did when Remigio filed the underlying case, as follows:

Unfair competition, practices, declared unlawful. (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
(b) In construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.
(c) No showing that the proceeding or suit would be in the public interest (as these terms are interpreted under section 5(b) of the Federal Trade Commission Act) is necessary in any action brought under this section.
(d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.
(e) Any person may bring an action based on unfair methods of competition declared unlawful by this section.
"'Consumer' means a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." HRS § 480-1 (2008).
[5] HRS § 480-13 (2008) states currently, as it did when the underlying lawsuit was filed, in part:

Suits by persons injured; amount of recovery, injunctions.. . .
. . . .
(b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:
(1) May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit; provided that where the plaintiff is an elder, the plaintiff, in the alternative, may be awarded a sum not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit. In determining whether to adopt the $5,000 alternative amount in an award to an elder, the court shall consider the factors set forth in section 480-13.5; and
(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorney's fees together with the costs of suit.
[6] Although the record does not indicate that judgment was entered against Supnet or Kailing, the circuit court entered judgment pursuant to Hawai`i Rules of Civil Procedure (HRCP) Rule 54(b) (2000), finding that "there is no just reason for delay[.]"